UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

x------------------------------------------------------
-----x

Martin Sabba and Annette Sabba,

                           Plaintiffs,     3:03cv00097 (MRK)

            vs.                            January 6, 2005

Matthew Pambianchi,  John Pambianchi,
Eileen Pambianchi and Chrysler Financial
Corporation

                           Defendants.
x------------------------------------------------------
                                  -----x


**JOINT PRE-TRIAL MEMORANDUM**

1.      **Trial Counsel**:

         a.      Plaintiffs:      Stewart M. Casper
                                  Harold R. Burke
                                  Casper & de Toledo LLC
                                  1458 Bedford Street
                                  Stamford, CT 06905
                                  tele:    (203) 325-8600

         b.      Defendants:      Royce L. Vehslage, Esq. (for the Pambianchi Defendants)
                                  Genovese, Vehslage & Chapman
                                  500 Enterprise Drive
                                  Rocky Hill, CT 06067

                                  Kenneth J. Mulvey, Esq. (for Chrysler Financial)
                                  David J. Crotta, Jr., Esq.
                                  Mulvey, Oliver, Gould & Crotta
                                  83 Trumbull Street
                                  New Haven, CT  06511

**2.    Jurisdiction:**

Jurisdiction is predicated upon 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**3.    Jury - Nonjury:**

This case will be tried to a jury.

**4.    Length of trial:**

Five days of evidence

**5.    Further Proceedings**:

None anticipated

**6.    Nature of the Case:**

a.    On July 7, 2002, the motorcycle driven by Martin Sabba collided with the vehicle driven by Matthew Pambianchi on Route 33 in Ridgefield. At the time of the collision, Martin's wife, Annette Sabba, was a passenger on the motorcycle. The collision occurred when Pambianchi made a left hand turn across the path of the Sabbas' motorcycle. Martin Sabba was unable to avoid the Pambianchi vehicle and collided with it. The Sabbas sustained extensive physical injuries.

b.    Martin Sabba claims that Matthew Pambianchi negligently operated his motor vehicle causing Sabba's physical injuries, losses and damages. Sabba claims that Pambianchi's father, John Pambianchi, who is the registered lessee, is liable pursuant to *Connecticut General Statutes* § 52-182 the Family Car Doctrine. Sabba claims that Chrysler Financial is liable pursuant to *Connecticut General Statutes* § 14-154a.

c.    Annette Sabba claims that Matthew Pambianchi negligently operated his motor vehicle causing Sabba's physical injuries, losses and damages. Sabba claims that Pambianchi's father, John Pambianchi, who is the registered lessee, is liable pursuant to *Connecticut General Statutes* § 52-182 the Family Car Doctrine. Sabba claims that Chrysler Financial is liable pursuant to *Connecticut General Statutes* § 14-154a.

d.    The Sabbas claim damages for the loss of consortium each suffered which arose from the injuries sustained by the other spouse.

**7.    Trial by Magistrate Judge**

Trial by judge and jury requested.

**8.    Evidence:**

**a.    Witnesses**

See Schedules A and B

**b.    Exhibits**

See Schedules C and D

**c.    Deposition testimony**

None anticipated

**9.    Stipulations of Fact and Law:**

<u>Uncontroverted Facts</u>

a.    On July 7, 2002:
    i.    Matthew Pambianchi was the minor son of John Pambianchi.
    ii.    The vehicle driven by Matthew Pambianchi was leased to John Pambianchi.
    iii.    Matthew Pambianchi operated the vehicle within the scope of a general authority of John Pambianchi.
    iv.    The vehicle driven by Matthew Pambianchi was owned by Chrysler Financial and leased to John Pambianchi.
    v.    The lease agreement between John Pambianchi and Chrysler Financial permitted Matthew Pambianchi to operate the vehicle.
b.    At the time of the collision, July 7, 2002 at approximately 4:30 p.m.,:
    i.    The Sabbas were traveling south on Route 33 (a/k/a West Wilton Road) in Ridgefield, Connecticut and Matthew Pambianchi was traveling north.
    ii.    The posted speed limit for this section of Route 33 was 35 MPH.
    iii.    Route 33 was a Connecticut state highway divided into two clearly marked lanes.
    iv.    The road was dry with clear visibility.

      v.      Matthew Pambianchi attempted to make a left hand turn, across the southbound travel lane and into a private driveway located at 347 West Wilton Road, Ridgefield.

c.      At the point Matthew Pambianchi made his left turn across Route 33, he had a northerly linear unobstructed site line.

d.      The Sabbas' motorcycle's headlight was illuminated.

e.      The Sabbas' motorcycle struck the right side of the Pambianchi vehicle.

f.      Martin Sabba sustained the following injuries as a result of the collision which required hospitalization and rehabilitation:

      i.      Fractures of his right and left hands and wrists which required surgical intervention

      ii.      Laceration of his liver.

      iii.      Torn bile duct.

      iv.      Post-surgical abdominal infections which resulted in the removal of his gallbladder.

g.      Martin Sabba's medical records, billing records and summaries of his treatment and billing records are admissible.

h.      Annette Sabba sustained the following injuries as a result of the accident which required hospitalization and rehabilitation:

      i.      Tri-malleolar fracture of her left ankle which required surgical intervention.

      ii.      Fracture of her right hand.

      iii.      Three fractured ribs.

      iv.      Concussion.

i.      Annette Sabba's medical records, billing records and summaries of her treatment and billing records are admissible.

j.      Pursuant to Connecticut General Statutes § 14-154a, Chrysler Financial is liable to the Sabbas for any negligence on the part of Matthew Pambianchi.

k.      Pursuant to Connecticut General Statutes § 52-182, John Pambianchi is liable to the Sabbas for any negligence on the part of Matthew Pambianchi.

Plaintiffs' Contested Issues of Fact

a.      Matthew Pambianchi was solely responsible for the collision for one or more of the following reasons:

      i.      He failed to operate his vehicle entirely within a single traffic lane in violation of Connecticut General Statutes § 14-236;

      ii.      He failed to ascertain that he could safely turn his vehicle from the right lane in violation of Connecticut General Statutes § 14-236;

      iii.      He failed to grant Martin Sabba the right of way in violation of Connecticut General Statutes § 14-242;

      iv.      He failed to keep and operate his vehicle under reasonable and proper control; and,

      v.      He failed to keep a proper lookout for other vehicles being operated

upon the highway.

    b.      All of the Sabbas' physical injuries were proximately caused by the collision

    c.      Martin Sabba sustained injuries to both wrists which have resulted in scarring and permanent disability causing chronic pain and limitations in movement and strength.  These injuries have effected his lifestyle, activities and relationship with his wife

    d.      Annette Sabba sustained permanent injury to her left ankle resulting in a limitation in range of motion and long term risk of traumatic arthritis. These injuries have effected her lifestyle, activities and relationship with her husband.

<u>Defendants' Contested Issues of Fact</u>

    a.      Comparative negligence of Martin Sabba.

    b.      All of the Sabbas financial loss claims were proximately caused by the collision.

**10.    Jury Trial**

        **a.    Proposed Voir Dire Questions**

See Schedules E and F

        **b.    Proposed Jury Instructions**

See Schedules G and H

        **c.    Proposed Verdict Form**

See Schedules I

**11.    Anticipated Evidentiary Problems**

It may now be asserted by the plaintiff, Martin Sabba, to produce Dr. Jay Merker to testify concerning the effects into the future of his gall bladder removal and other non-stated issues into the future. No report or such opinion has been disclosed at any time and no identification of the individual as a proposed expert witness at any time. The precise nature of the subject of his testimony remains unknown to the defendant, thus, making it impossible to defend.

Plaintiffs have attached a memoranda on this issue and will be submitting a disclosure relative to Dr. Merker's testimony.

Plaintiffs will object to the section of Defendants' Exhibit 500 as it relates to indemnification as this section should be redacted.

For the Plaintiffs                        _____

Harold R.  Burke

For the Defendants

_____

Royce Vehslage

_____

Kenneth J. Mulvey, Jr.

**SCHEDULE A**

**PLAINTIFFS' WITNESS LIST**

| | | | |
|---|---|---|---|
| 1 | Matthew Pambianchi | 55 White Birch Road Ridgefield, CT | Defendant |
| 2 | Officer Daniel Gjodesen | Ridgefield Police Dept. Ridgefield, CT | Accident investigation |
| 3 | Sgt. Comstock | Ridgefield Police Dept. Ridgefield, CT | Accident Investigation - field measurements |
| 4 | Calvin Brunen | 348 West Wilton Road Ridgefield, CT | Eyewitness to the collision |
| 5 | Representative of Ridgefield EMS | Ridgefield, CT | First responder |
| 6 | Capt. Stephen Brown | Ridgefield Police Dept. Ridgefield, CT | Accident investigation - speed calculations |
| 7 | F. Scott Gray, M.D. | Connecticut Family Orthopedics, P.C. 33 Hospital Avenue Danbury, CT  06810 | Treating physician; will address Martin's orthopedic injuries, treatment and prognosis. (CV attached) |
| 8 | Annette Sabba | 6 Terrace Circle 1B Great Neck, NY | Plaintiff; will address cause of accident and damages. |
| 9 | Sharon Fierstein | 4 Maple Drive Woodbury, NY 11797-1528 | Relative; will address pre-accident activities and post-accident recuperation |
| 10 | Marion Beale | 59 Londonderry Drive Greenwich, CT | Relative; will address pre-accident activities and post-accident recuperation |
| 11 | Lawrence Schweitzer, M.D. | Connecticut Family Orthopedics, P.C. 33 Hospital Avenue Danbury, CT  06810 | Treating physician; will address Annette's orthopedic injuries, treatment and prognosis (CV attached) |
| 12 | Barbara Mehlman | 6 Terrace Circle 2d Great Neck, NY | Friend; will address effects of the collision on Annette |
| 13 | Martin Sabba | 6 Terrace Circle 1B Great Neck, NY | Plaintiff; will address cause of accident and damages. |
| 14 | Jay Merker, M.D. | Long Island Medical & | Treating physician; will address |

| | | | |
|---|---|---|---|
| | | Gastroenterology Assoc. 192 East Shore Road Great Neck, NY 11023 | Martin's abdominal injuries and treatment. (CV Attached) |
| 15 | Brian Pollitt | Manchester, England | Friend; will address effects of the collision on Martin |
| 16 | John Swanson | 275 Hartford Avenue East Granby, CT | Expert; will address physical evidence, causation and absence of contributory negligence. |
| 17 | Charles Contrino | 1215 76th Street Brooklyn, NY | Friend; will address effects of the collision on Martin |
| 18 | Edward Pino | 610 115th St, Apt 75, NY, NY | Friend; will address effects of the collision on Martin |

**SCHEDULE B**
**DEFENDANTS' WITNESS LIST**

A.      Matthew and John Pambianchi

John Pambianchi, 55 White Birch Rd., Ridgefield, CT, Defendant

Matthew Pambianchi, 55 White Birch Rd., Ridgefield, CT

B.      Chrysler Financial

Matthew Pambianchi, 55 White Birch Rd., Ridgefield, CT, Defendant

Lt. Paul Benevelli, Ridgefield Police Dept., Ridgefield, CT, Investigating Police Officer

**SCHEDULE C**

**PLAINTIFFS' EXHIBIT LIST**

| | |
|---|---|
| 1 | Ridgefield Police Accident Report |
| 2 | Police Investigation Photographs (38) |
| 3 | Police Accident Diagram (enlarged) |
| 4 | Aerial View of Route 33 (enlarged) |
| 5 | Swanson curriculum vitae |
| 6 | Swanson Accident Reconstruction Report |
| 7 | Handlebars |
| 8 | Martin Sabba - Hospital Photos (A - F) |
| 9a-b | Martin Sabba CT- Scan |
| 10 a - l | Martin Sabba X-Rays (see attached summary sheet) |
| 11 | Martin Sabba Current Photographs of Hands and Abdomen (A - F) |
| 12 | Martin Sabba Medical Illustrations - Abdominal Injuries |
| 13 | Martin Sabba Medical Illustrations - Left Wrist Surgery |
| 14 | Martin Sabba Medical Illustrations - Summary of Injuries |
| 15 | Martin Sabba Medical Illustrations - X-Rays of the Left Wrist |
| 16 | Martin Sabba Medical Illustrations - X-Rays of the Right Wrist |
| 17 | Martin Sabba Medical Records - CT Family Orthopedics |
| 18 | Martin Sabba Medical Records - Danbury Ambulance Service |
| 19 | Martin Sabba Medical Records - Danbury Hospital |
| 20 | Martin Sabba Medical Records - Danbury Radiological Asso |
| 21 | Martin Sabba Medical Records - Douglas Held, M.D. |
| 22 | Martin Sabba Medical Records - Gentiva Health Services |
| 23 | Martin Sabba Medical Records - Gurwin Home Care Agency |
| 24 | Martin Sabba Medical Records - Jay Merker, M.D. |
| 25 | Martin Sabba Medical Records - L.I. Jewish Med. Ctr. |
| 26 | Martin Sabba Medical Records - LIJ Radiology |
| 27 | Martin Sabba Medical Records - O'Connell Selig & Assoc |
| 28 | Martin Sabba Medical Records - Old Brookville Phys. Therapy |
| 29 | Martin Sabba Medical Records - Pharmacy Records |

| | |
|---|---|
| 30 | Martin Sabba Medical Records - Ridgefield EMS |
| 31 | Martin Sabba Treatment Chronology |
| 32 | Martin Sabba's Medical Bill Notebook |
| 33 | Martin Sabba's Medical Bill Summary Log |
| 34 | Martin Sabba's Medical Provider Summary Log |
| 35 | Annette Sabba - Hospital Photos (4) - Annette Sabba |
| 36 a - m | Annette Sabba X-Rays (see attached summary sheet) |
| 37 | Annette Sabba Current Photographs (1) |
| 38 | Annette Sabba Lost Wage Records |
| 39 | Annette Sabba Medical Illustration - 7/7/02 Left Ankle Surgery |
| 40 | Annette Sabba Medical Illustration - Anatomy of the Chest |
| 41 | Annette Sabba Medical Illustration - Summary of Injuries |
| 42 | Annette Sabba Medical Illustration - X-Ray of the Right Wrist |
| 43 | Annette Sabba Medical Illustration - X-rays of Left Ankle |
| 44 | Annette Sabba Medical Records - Associated Neurologists |
| 45 | Annette Sabba Medical Records - CT Family Orthopedics |
| 46 | Annette Sabba Medical Records - Danbury Hospital |
| 47 | Annette Sabba Medical Records - Danbury Radiological Asso. |
| 48 | Annette Sabba Medical Records - Gurwin Home Care Agency |
| 49 | Annette Sabba Medical Records - Horizon Health Staffing |
| 50 | Annette Sabba Medical Records - Long Island Diagnostic Imaging |
| 51 | Annette Sabba Medical Records - Manhasset Diagnostic Imaging |
| 52 | Annette Sabba Medical Records - O'Connell Selig & Assoc. |
| 53 | Annette Sabba Medical Records - Pharmacy Records |
| 54 | Annette Sabba Medical Records - Physical Therapy and Sports Rehabilitation |
| 55 | Annette Sabba Medical Records - Richard Bochner, M.D. |
| 56 | Annette Sabba Medical Records - Ridgefield EMS |
| 57 | Annette Sabba Treatment Chronology |
| 58 | Annette Sabba's Medical Bill Notebook |
| 59 | Annette Sabba's Medical Bill Summary Log |
| 60 | Annette Sabba's Medical Provider Summary Log |
| 61 | Sabba Touring Photographs (A - H) |

62          Isle of Mann Touring Photographs (A - H)

63          Sabba Motorcycle Photographs (A - H)

64          Mortality Table

## X-Ray Summary

| Exhibit | Party | Date | Type | View | Location | Provider | No. |
|---|---|---|---|---|---|---|---|
| 9a | MS | 07-Jul-02 | CT | Abdom. | | Danbury Hospital | 10 |
| 9b | MS | 13-Jul-02 | CT | Abdom. | | Danbury Hospital | 4 |
| | | | | | | | |
| 10a | MS | 07-Jul-02 | X-RAY | Hand | Right/Left | Danbury Hospital | 1 |
| b | MS | 07-Jul-02 | Flouroscan | Hand | Right/Left | Danbury Hospital | 10 |
| c | MS | 11-Jul-02 | X-RAY | Hand | Right/Left | Danbury Hospital | 2 |
| d | MS | 16-Jul-02 | X-RAY | Hand | Right/Left | Danbury Hospital | 5 |
| e | MS | 20-Aug-02 | X-RAY | Hand | Right/Left | L.I. Jewish Hospital | 7 |
| f | MS | 05-Sep-02 | Flouroscan | Hand | Left | Danbury Hospital | 3 |
| g | MS | 13-Sep-02 | X-RAY | Hand | Right/Left | CT. Family Ortho. | 2 |
| h | MS | 19-Sep-02 | X-RAY | Hand | Right | CT. Family Ortho. | 4 |
| I | MS | 08-Oct-02 | X-RAY | Hand | Right | CT. Family Ortho. | 2 |
| j | MS | 29-Oct-02 | X-RAY | Hand | Right | CT. Family Ortho. | 2 |
| k | MS | 26-Nov-02 | X-RAY | Hand | Right | CT. Family Ortho. | 2 |
| l | MS | 24-Feb-03 | X-RAY | Hand | Right/Left | CT. Family Ortho. | 2 |
| | | | | | | | |
| 36a | AS | 07-Jul-02 | X-RAY | Ankle | Left | Danbury Hospital | 2 |
| b | AS | 08-Jul-02 | X-RAY | Ankle | Left | Danbury Hospital | 1 |
| c | AS | 19-Jul-02 | X-RAY | Ankle | Left | CT. Family Ortho. | 1 |
| d | AS | 19-Jul-02 | X-RAY | Hand | Right | CT. Family Ortho. | 1 |
| e | AS | 19-Jul-02 | X-RAY | Knee | Right | CT. Family Ortho. | 2 |
| f | AS | 16-Aug-02 | X-RAY | Ankle | Left | CT. Family Ortho. | 1 |
| g | AS | 16-Aug-02 | X-RAY | Hand | Right | CT. Family Ortho. | 1 |
| h | AS | 13-Sep-02 | X-RAY | Ankle | Left | CT. Family Ortho. | 2 |
| I | AS | 08-Oct-02 | X-RAY | Knee | Right | CT. Family Ortho. | 2 |
| j | AS | 08-Oct-02 | X-RAY | Ankle | Left | CT. Family Ortho. | 1 |
| k | AS | 29-Oct-02 | X-RAY | Ankle | Left | CT. Family Ortho. | 2 |
| l | AS | 06-Jan-03 | X-RAY | Ankle | Left | CT. Family Ortho. | 1 |
| m | AS | 06-Jan-03 | X-RAY | Hand | Right | CT. Family Ortho. | 1 |

**SCHEDULE D**
**DEFENDANTS' EXHIBITS**

500     Lease Agreement as between Chrysler Financial Corporation and John Pambianchi

**SCHEDULE E**
**PLAINTIFFS' PROPOSED VOIR DIRE**

1. What do you like to do in your spare time?

2. Do you have any feelings about middle ages couples who ride motorcycles as a hobby or as enthusiasts?

3. Some people feel that if you ride a motorcycle you are taking a chance and it doesn't matter if someone driving a car was negligent and caused injury even if you were doing everything safely, if you were on a motorcycle you just shouldn't receive compensation or your compensation should be different. Do any of you feel like that?

4. How do you feel about people who come to court and claim compensation for injuries that they have sustained in a vehicle collision?

5. Do you have any feelings about lawyers in these type of cases who represent people claim injury?

6. Any feelings about lawyers who represent people who defend these sort of claims?

7. From the very little that you have heard about this case, do any of you feel that this is a case that should not have been brought?

8. From our exposure to the media we all know that some cases are what might be called frivolous cases. Does anyone have a sense that this is a frivolous case?

9. Just as bad as a frivolous case would be a frivolous defense. Does anyone have a sense that the defense in this case is frivolous?

10. Have you or any family members or close friends experienced serious physical injuries that required multiple surgeries?

11. Cases like these provide for the award of fair , just and reasonable monetary compensation to  fix things that can be fixed, help what can't be fixed and make up for what can't be fixed and what can't

be helped, how do you feel about awarding money in such cases?

12. The burden of proof of "fair preponderance of the evidence" applies to every fact in dispute in this case - both in terms of liability and damages. Do you have any reservation about that "fair preponderance" standard or applying that standard to all of the facts in dispute in this case?

13. Since the Plaintiffs have the burden of proof of the essential allegations of their complaint, do you think that standard - that only requires that they tip the scales ever so slightly in their favor, makes it too easy for the plaintiffs to win?

14. Assuming that you find liability in favor of the Plaintiffs, what problems would you have in awarding money as compensation for their past medical expenses?

15. Assuming that you find liability in favor of the Plaintiffs, what problems would you have in awarding money as compensation for their future medical expenses?

16. Assuming that you find liability in favor of the Plaintiffs, what problems would you have in awarding money as compensation for their physical injuries?

17. Assuming that you find liability in favor of the Plaintiffs, what problems would you have in awarding money as compensation for their physical pain and emotional suffering?

18. Assuming that you find liability in favor of the Plaintiffs, what problems would you have in awarding money as compensation for their loss of enjoyment of life's activities?

19. Assuming that you find liability in favor of the Plaintiffs, what problems would you have in awarding money as compensation for their scaring?

20. Do you have any type of prejudgment about cases like this that a certain amount of money should be awarded or limited in any way and if so, what type of limitations do you believe should exist?

**SCHEDULE E**

**DEFENDANTS' PROPOSED VOIR DIRE**

1.  Have you or any members of your immediate family ever been a plaintiff in a civil lawsuit for personal injuries or made a claim, including work related claims, for personal injuries as against any individual or corporation?

2. Have you or any members of your immediate family been involved in an accident, whether that be an automobile, work or recreation related accident, where you or a member of your immediate family, sustained any serious personal injury, including injury to your extremities, being hands, arms, legs and feet?

3. Have you or any members of your immediate family ever been a defendant in a civil lawsuit for personal injuries where a third party made a claim against you or a member of your immediate family for personal injuries sustained in an automobile, work or recreation related accident?

4. Is there any member of the jury panel that does not operate a motor vehicle or does not have a license to operate a motor vehicle?

5.  Do you know or are you acquainted with any of the parties in this case? If the answer is yes, please identify the parties.

6. Do you know or are you acquainted with any of the attorneys or law firms involved in this case? If the answer is yes, then could you please identify the attorney or law firms.

7. Do you know or have you read or heard anything about the motor vehicle accident that is the subject of this civil lawsuit?

8. Do you or any members of your immediate family presently, or at any time in the past, lease a motor vehicle for your personal or business use?

9. Have you or any members of your immediate family at any time leased a motor vehicle from Chrysler Financial Corporation?

10. If you or any members of your immediate family presently or at any time in the past have leased a motor vehicle, have you at any time been dissatisfied with the leasing arrangement or any circumstances during the course of the lease that would cause you to be prejudice against the defendant Chrysler Financial Corporation?

11. Have you ever been a party to any civil claim or lawsuit arising out of the leasing arrangement of you or any member of your immediate family?

12. Have you or any member of your immediate family at any time made a claim, or brought a civil lawsuit, against a leasing company? If the answer is yes, please briefly explain the matter.

13. Do you as a potential juror have any prejudice or bias as against a corporate defendant, Chrysler Financial Corporation, because it is a corporation as compared to an individual when you will be called upon to weigh issues as between the parties in this civil action.

14. Have you or any member of your immediate family studied law either formally or informally? If the answer is yes, please advise as to the nature of the study.

15. Have you or any member of your immediate family ever studied medicine either formally or informally? If the answer is yes, please state the nature of the studies.

16. Have either you or any member of your immediate family been employed in the legal or medical field at any time? If the answer is yes, please explain the nature of your employment.

17. Have you ever been treated or are you familiar with any of the physicians or healthcare providers identified as providing treatment and/or care to either of the plaintiffs? If the answer is yes, then please advise as to your state of knowledge.

18. The Court will instruct you that sympathy is to play no part in your decision of the case. Can you if chosen, place sympathy out of your mind and just decide the case on the facts and evidence according to the law the judge provides to you?

19. Have you at any time served as a witness in any civil lawsuit? If the answer is yes, please advise briefly as to the nature of your role as a witness.

20. Have you or any members of your family served in an employment capacity where you investigated any type of accidents and provided factual comment by way of investigation or opinions as to fault in accidents?

21. Do you or any members of your immediate family belong to any form of motorcycle club or operate a motorcycle for recreational, personal or business travel use?

22. Do you or any members of your immediate family presently or have you in the past owned or leased a motorcycle(s)?

**SCHEDULE G**

**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

**AND**

**JURY INTERROGATORIES**

I.  LIABILITY IN NEGLIGENCE

The Plaintiffs have alleged that they were injured when they struck a vehicle operated by Defendant Matthew Pambianchi.  The Plaintiffs allege that while traveling on Route 33 in Ridgefield on their motorcycle, Defendant negligently made a left turn directly in front of them causing them to collide with the Defendant's vehicle.

The Plaintiffs further claim that his parents, Defendant John Pambianchi is liable under the Connecticut Family Car Doctrine and that Chrysler Financial is liable as the vehicle's lessor.

In general, negligence is the doing of something which a reasonably prudent person would not do under the circumstances.  Conversely, negligence may also consist of omitting to do what a reasonably prudent person would do under similar circumstances.  Essentially, negligence is the breach of a legal duty owed by one person to another.  New England Iron Works, Co. v. Connecticut Co., 98 Conn. 609, 610, 611 (1923); Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. II, § 522(a), p. 834.

For liability to exist in negligence, the evidence must show three things. First, the evidence must show that a legal duty existed to prevent harm to another. Second, the evidence must show that a defendant acted in a manner which breached that legal duty.  And, third, that a defendant's failure to act

in a legally reasonable manner was a proximate cause of the injuries for which a plaintiff seeks compensation. I will now review each of these elements.

A.  THE VIOLATION OF A LEGAL DUTY

The first element of negligence is the violation of a legal duty owed to the Plaintiffs. "A duty to use care may arise . . . from a statute or from circumstances under which a reasonable person , knowing what he knew or should have known, would anticipate the harm of the general nature of that was suffered was likely to result from his act or failure to act." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982). In this case, the Plaintiffs must prove that Matthew Pambianchi owed them a duty existed to observe oncoming traffic and only turn when it could be done safely.

The Plaintiffs' specific allegations of negligence are contained in Paragraph 12 of the Amended Complaint.  There are two allegations of common law negligence and two allegations of statutory negligence. The Plaintiffs are required to prove only <u>one</u> of the specifications of negligence in order for you to find Matthew Pambianchi negligent.

1.  Common law negligence.

The common law allegations of negligence are that Matthew Pambianchi:

a.  Failed to keep and operate his vehicle under reasonable and proper control; and,

b.  Failed to keep a proper lookout for other vehicles being operated upon the            highway.

It is the law of our state that the operator of an automobile on the highway must have his vehicle under reasonable and proper control at all times Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed. Vol. I, § 71(d), p. 135. What degree of control is demanded by reasonable prudence under any existing circumstance is a question for you to determine.  Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed., Vol. I, § 71(e), p. 136.  If you find that under all the circumstances Matthew

Pambianchi did not exercise that amount of care with respect to the control of his vehicle which a reasonably prudent driver would have exercised under those circumstances, then you must find Matthew Pambianchi negligent.

In terms of the second allegation of common law negligence, the Plaintiffs allege that Matthew Pambianchi failed to keep a proper lookout.

What is a proper lookout? The operator of a motor vehicle upon the public highway is under the duty to keep a reasonable and proper lookout and to be vigilant to detect anything in the path of his moving vehicle. The operator is to keep a lookout and see what there is to be seen. Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 72(b), p. 138.

The law charges the operator of a motor vehicle traveling on a public highway with seeing all that he or she ought to have seen, had the operator been in the exercise of reasonable care. The operator is chargeable not only with notice of those conditions which are known to exist, but also with notice of those conditions, which would have been brought to the operator's attention and the operator been exercising reasonable care in maintaining a proper lookout." Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 72(b), p. 138. He cannot excuse himself from injuring any object on the roadway by saying he did not see it, if, under the circumstances, as an ordinarily prudent person driving his car, he should have seen it. The law charges him with seeing all that he ought in the exercise of due care to have seen. Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I,  § 72(g), p. 140.

If you find that under all of the circumstances Matthew Pambianchi did not exercise that amount of care with respect to keeping a proper lookout which a reasonably prudent driver would have exercised under those same circumstances, then you must find him negligent.

22

2.   Duty Imposed by Statute or Ordinance.

A statute, as a legislative enactment, may embody a standard of conduct which a reasonable person is required to follow.  A violation of that statute may constitute negligence *per se* thereby creating a presumption of negligence.  Ward v.  Greene, 267 Conn.  539, 548, 839 A.2d 1259 (2004). Provided that a plaintiff is among the class of individuals that the statute is designed to protect, a claim based upon a statutory violation is permitted.  Id.  at 550.  A violation of a state motor vehicle statute may be considered negligence per se.

In this case, Connecticut General Statutes § 14-242(e) provides:

> The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or within the area formed by the extension of the lateral lines of the private alley, road or driveway across the full width of the public highway with which it intersects, or so close to such intersection of public highways or to the area formed by the extension of the lateral lines of said private alley, road or driveway across the full width of the public highway as to constitute an immediate hazard.

Thus, if you determine that at the time Matthew Pambianchi commenced his turn, the Plaintiffs were so close to the driveway that the Defendant's turning  constituted an immediate hazard then you must find Matthew Pambianchi negligent.

The Plaintiffs also allege that Matthew Pambianchi violated Connecticut General Statutes § 14-236.  This statute provides:

> When any highway has been divided into two or more clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has ascertained that such movement can be made with safety.

If you find that Matthew Pambianchi violated this statute by moving his vehicle from his travel

lane before ascertaining that such movement could be made with safety, then you must find the Defendant negligent.

      C.      LIABILITY OF DEFENDANT CHRYSLER FINANCIAL UNDER C.G.S.
                §14-154a

There is evidence in this case that Matthew Pambianchi lawfully operated an automobile leased by Defendant Chrysler Financial. Under these circumstances, the law provides that if Matthew Pambianchi is found liable for negligent conduct in his operation of the leased vehicle, Chrysler Financialis also liable to the same extent.  Section 14-154a of the Connecticut General Statutes is entitled "Liability of Owner For Damages Caused By Rented or Leased Car."  This statute provides that "[a]ny person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."  If you find that the Defendant Chrysler Financial did rent or lease a vehicle to the Pambianchi family or that Matthew was an authorized driver of a vehicle rented or lease by Chrysler Financial and if you find that Matthew Pambianchi's negligence was the proximate cause of each Plaintiff's injuries, then you must, as a matter of law, find the Defendant Chrysler Financial is also liable to the Plaintiffs.

      D.      PROXIMATE CAUSE

The final element of a negligence claim is proximate causation. In order for the Plaintiffs to recover from the Defendants in this action, you must be satisfied that any negligence, or breach of duty, by Matthew Pambianchi was a proximate cause of injuries claimed and proven.  Negligence is deemed to be a proximate cause of any injury when it is a substantial factor in producing that injury. Negligence, to be a substantial factor in producing the injury, must have contributed to the injury as a

cause of the injury.  Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed., Vol. I, § 110 (c), p. 222.

The Plaintiffs are entitled to recover all damages which proximately result from the negligence of Matthew Pambianchi. The question you must address is:  Did the damages follow in a natural sequence from the injury?  In accordance with my instructions on damages, the Plaintiffs are entitled to recover for all damages proximately caused by Matthew Pambianchi's  negligent act(s) or omission(s), whether or not the results were to be reasonably anticipated from such negligent act(s) or omission(s).  Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed., Vol. I, § 111(b), citing <u>Corey v. Phillips</u>, 126 Conn. 246, 255 (1939); <u>Mourison v. Hansen</u>, 128 Conn. 62, 66 (1941).  Thus, "[i]t need not be foreseeable . . . that the particular injury would occur in the manner that it did, nor that the particular result which followed must have been reasonably foreseeable."  Wright, FitzGerald & Ankerman, <u>Conn. Law of Torts</u>, 3rd Ed., § 33 (1991).  What matters is that a defendant's negligent conduct must have been a substantial factor in producing a plaintiff's injuries.

E.    SPECIAL DEFENSE OF COMPARATIVE NEGLIGENCE

The Defendants claim that Martin Sabba is responsible in whole or in part for his own injuries. With respect to the possible comparative negligence of Mr. Sabba there are two doctrines in the law which apply this claim.

First, Connecticut General Statute Sec. 52-114 provides that in any action to recover damages for negligently causing personal injury or property damage, it shall be presumed that the  person  who was injured or who suffered property damage was, at the time of the commission of the alleged negligent act or acts, in the exercise of reasonable care. If contributory negligence is relied upon as a defense, as it is in this case, the burden of proving such contributory negligence shall rest upon the

defendant or defendants. Accordingly, unless the defendants prove by a preponderance of the evidence that Mr. Sabba was not exercising reasonable care, you must presume that he was operating his motorcycle with reasonable care when the collision occurred. *Juchniewicz v. Bridgeport Hosp.,* 86 Conn.App. 310, 315, 860 A.2d 1275 (2004).

Second, under the sudden emergency doctrine, a sudden emergency modifies the standard of reasonable conduct ordinarily expected of reasonable drivers by allowing the occurrence of a sudden or unexpected event to be taken into account as one of the circumstances determining what conduct is reasonable. In an emergency not due to his own making, a driver is not relieved of all obligations to exercise care, but is required to exercise the care of an ordinarily prudent driver acting in such an emergency. A driver faced by such an emergency has some leeway when deciding rapidly between alternative courses of action. Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed., Vol. I, § 178(c), p. 341; <u>Oberempt v. Ergi</u>, 176 Conn. 652, 656 (1979).            Under the sudden emergency doctrine, the rule is that a driver who is put in a perilous condition by the acts or omissions of another cannot be regarded as chargeable with contributory negligence if he takes such steps to protect himself as a reasonably prudent driver would take, even though he might have avoided the injury by the use of better judgment and by taking a course other than the one he adopted. Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed., Vol. I, § 178(b), p. 341; Vol. II, § 537A(b), p. 869, citing <u>Marley v. New England Transportation Co.</u>, 133 Conn. 586, 588, 589 (1947); <u>Mei v. Alterman Transportation Lines, Inc.</u>, 159 Conn. 307, 312 (1970). You may find that the circumstances in this case were a sudden emergency that Mr. Sabba was facing when Matthew Pambianchi vehicle cut in front of him. If you find that he was reasonably confronting a sudden emergency, then his conduct is to be judged in view of that sudden emergency and you will take into consideration his lack of opportunity

26

for deliberation.  Zimny v. Cooper-Jarrett, Inc., 8 Conn. App. 407, 416 n.2 (1986).  If you find that

the Plaintiff was confronted with an emergency situation not of his own making, you may consider that

emergency as an important factor in judging his conduct.  The test would be the care of an ordinarily

prudent person situated as he was situated, and confronted with such an emergency.  Wright &

Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 178(a), p. 341, Vol. II, § 537A(a), p. 869.

II.    DAMAGES

The Plaintiffs are seeking two types of damages: 1) special damages which includes all elements

of economic damage or loss and; 2) non-economic damages.  I will now explain each of these types of

damages to you.

A.    Economic Damages.

Included in the damages which you may award in this case are the items of so-called economic

special damages.  Economic damages are actual financial losses suffered by the Plaintiffs.  They include

past losses, that is, those suffered up until the time of trial, and future losses.  The Plaintiffs are entitled

to be compensated for all out-of-pocket expenses or costs as a result of the injuries suffered in this

accident, including medical bills which have already been incurred and those that will be incurred in the

future, other economic losses and loss of earning capacity.  Wright & Ankerman, Connecticut Jury

Instructions, 4th Ed., Vol I, § 226(r), pp. 74-75 (1998 Supplement).

(1)    Medical Bills

Economic damages claimed by the Plaintiffs include medical bills which have been introduced

into evidence by the Plaintiffs as part of their claims reflecting expenses already incurred.  These bills

are in the notebooks  marked Plaintiffs' Exhibits __ and  __.

Plaintiff Martin Sabba claims a total of $ _____ in past medical bills and related

expenses. Plaintiff Annette Sabba claims a total of $ _____ in past medical bills and related

expenses. If and to the extent that you find these bills were reasonable and were made necessary by the

their respecticve injuries, then, in the event of a Plaintiffs' verdict you are to allow them as part of

economic damages.  Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 226(f), p.

413; see also General Statutes § 52-572h(a)(1).

       Proof of expenses incurred affords evidence of the value of the services or items, and if the

expenses do not appear unreasonable in amount, either from other evidence or through your own

common sense, their reasonableness should be accepted.  Flynn v. First National Bank & Trust Co.,

131 Conn. 430, 436 (1944).  Thus, the Plaintiffs are not required to introduce evidence of their

reasonableness.  If no contrary evidence has been offered and your common sense and experience do

not indicate to you that the charges are unreasonable, then you should conclude that these expenses are

reasonable. Tait & LaPlante, Handbook of Connecticut Evidence, §8.15 (2d Ed. 1988).

       (2)     Future Medical Expenses.

       In addition, if you find that, in order to treat their physical injuries, it is reasonably probable that

the Plaintiffs will incur medical expenses in the future, you should attempt to arrive at a fair amount to

compensate them for the probability that they may have to incur such expenses in the future.  Wright &

Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 226(b), p. 411.  "The cost and frequency

of past medical treatment . . . may be used as a 'yardstick for future expenses' if it can be inferred that

the plaintiff will continue to seek the same form of treatment in the future."  2 M. Minzer, J. Nates, C.

Kimball, D. Axelrod & R. Goldstein, Damages in Tort Actions, § 9.55[4], p. 9-80, as quoted in

Seymour v. Carcia, 221 Conn. 473, 478 (1992).  "It is not speculation or conjecture to calculate future

medical expenses based upon the history of medical expenses that have accrued as of the trial date,

particularly when there is also a degree of medical certainty that future medical expenses will be necessary. . . .  Future medical expenses do not require the same degree of certainty as past medical expenses . . . .  Where the doctor testifies that the injured party might need future treatment and the injured party testifies she still suffers pain, that testimony is sufficient for consideration of the element of future medical expense . . . ."  Willson Safety Products v. Eschenbrenner, 302 Ark. 228, 233, 788 S.W. 2d 729 (1990), as quoted in Seymour v. Carcia, supra, 221 Conn. at 478-479.

Expert testimony that the Plaintiffs might require additional treatment in conjunction with the evidence regarding the type and cost of treatment received by each  Plaintiff since the accident can raise a reasonable inference that he or she would continue to seek similar treatment in the future.  Seymour v. Carcia, supra, 221 Conn. at 480.  If you find that Matthew Pambianchis' negligence was a substantial factor in increasing the risk that the Plaintiffs  would require additional medical treatment including surgery, the "[t]he probability percentage for the occurrence of a particular harm . . . can be applied to the damages that would be justified if that harm should be realized."  Petriello v. Kalman, 215 Conn. 377, 397 (1990).  Accordingly, if such future surgery would cost $9,000.00 and there is a one-third chance that such surgery will be required, the Plaintiff should be awarded one-third of $9,000.00, or $3,000.00, together with the non-economic components of such treatment which I will discuss hereafter.  Petriello v. Kalman, 215 Conn. 377, 392-98 (1990).

In this case, you heard testimony from Plaintiffs' doctors that they will require medical treatment in the future.  The cost of this treatment and the time involved are similar to the cost and time involved in the treatment the Plaintiffs have already undergone, which expenses are depicted in Plaintiffs' Exhibits __ and ___. You may, therefore, look to the medical expenses relating to the Plaintiffs' medical treatment as submitted to you in Plaintiffs' Exhibits __ and ___ in determining the reasonable costs

associated with medical treatment they may need in the future as you find it to be. If you find that Matthew Pambianchi is responsible for these past and future medical expenses, and that these expenses are reasonable, then in the event of a verdict in favor of the Plaintiffs, you should compensate them for these expenses.

      B.     Non-Economic Damages

General damages or non-economic damages are not as precisely defined as economic damages. Non-economic damages include pain and suffering, mental anguish, disruption of the ordinary activities of life, temporary partial disabilities and permanent partial disabilities and scarring. Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 226(v), p. 78 (1998 Supplement). The rule is, that insofar as money can do it, the Plaintiffs are entitled to get fair and just compensation for the injuries she has suffered. It is for you, in the exercise of your best judgment, to say what is fair and just compensation to her insofar as money will compensate her for the injury and losses which she has suffered. The Court cannot provide you with any specific rules or formulas. It is entirely up to you. You have to apply sound, common sense in reaching the amount of your verdict. Of course, in considering that, you are bound by the allegations of the pleadings, and also you must disregard any suffering which has come to each Plaintiff from other causes. What you are to try to do is compensate each Plaintiff for his and her injuries, their respective pain and her suffering, scarring, disfigurement and limitation on ability to enjoy life. Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 226, pp. 410-11.

As to damages which continue into the future, you must, as best you can in your honest judgment, compensate each Plaintiff for such results, in the nature of pain, suffering, incapacity, physical impairment including scarring, loss of enjoyment of life's leisure activities as are reasonably probable. It

is not a matter of speculation; it is not a matter of mere guesswork. You must be satisfied with a

reasonable degree of certainty that the results for which you are attempting to compensate each of them

are reasonably probable based upon all the evidence which you have heard. It is a question you must,

as best you can, solve upon the basis of results which are reasonably probable to occur in the future.

And insofar as you find that it is reasonably probable in the future that each will continue to suffer pain,

that each will undergo additional medical treatment, that each will undergo suffering of any kind, that

each will be incapacitated to any degree from carrying on activities of a leisure nature, that each will

suffer physical or mental impairment, you will attempt to compensate the Plaintiffs Matrtin and Annette

Sabba for those things. Wright & Ankerman, <u>Connecticut Jury Instructions</u>, 4th Ed., Vol. I, § 226, pp.

410-11; <u>Bartholomew v. Schweizer</u>, 217 Conn. 671, 685, 686 (1991).

   (1)  Permanent Disability.

   You have heard the testimony from Plaintiffs' doctors as to injuries each Plaintiff sustained. that

each has suffered a severe injury to her right knee resulting in a severe pain and disability. If you find

that this condition was proximately caused by the accident and injuries sustained on June 7, 2000 or if

you find that it is reasonably probable that each Plaintiff has suffered a permanent physical impairment,

either in terms of a percentage or in terms of a limitation of physical function and such permanent

physical impairment is claimed by the Plaintiffs in this case, you will endeavor to compensate her for

such permanent injury or physical impairment as you find that she sustained and will suffer from in the

future. It is not a matter of guesswork or speculation. You must be satisfied fairly with the usual degree

of proof which I have defined for you, that the results which you are attempting to compensate her for

are reasonably probable. The Plaintiffs are entitled to be compensated for what she would fairly be

expected to suffer from her permanent condition over the period of her life expectancy. Wright &

Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 233(a), p. 427.

Of course, nothing absolute can be known. The best that can be done is to make a fair estimate, taking into account all of the material factors of common observation and experience in connection with your allowance for this permanent injury, if you find such permanent injury, which might be expected to reduce the probable duration of life or to impair the physical or mental condition of the Plaintiffs. Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 226(I), p. 414. You, the jury, are entitled to draw the inference that if each Plaintiff's disability still exists at the time of trial, it may in all probability continue. You may, but need not conclude by inference that an injury will be permanent even though there is no medical testimony expressly substantiating permanency. Royston v. Factor, 1 Conn. App. 576, 577, *cert. denied*, 194 Conn. 801 (1984). The "plaintiff is entitled to be compensated for what she would fairly be expected to suffer from her permanent condition over the period of her life expectancy." Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 233(a), p. 427.

"Damages may include future as well as past suffering and are measured by the extent of the loss incurred, as well as money can measure it. Damages are incapable of precise measurement. For that reason, considerable latitude is allowed a jury by our courts in evaluating damages." Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 231(c), p. 422, citing Keyes v. Churchward, 135 Conn. 115, 118, 119 (1948).

        (2)     Life Expectancy.

As part of each Plaintiff's claim, they have asserted that they will suffer from their injuries for the rest of their lives. In connection with these claims for permanent disability, you should consider the probable duration of each Plaintiff's life, having in mind not only her actuarial expectancy, which is the

age to which the average person of the Plaintiff's age will live, as shown by the mortality tables, and which expectancy, as I recall it, was agreed to be ___ years for Martin and ___ for Annette but you will also consider the particular condition of strength, health and physical stamina of each Plaintiff as bearing upon the probable duration of their life, whether longer or shorter than the average for a person of his or her age, as given in the expectancy table.  Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., Vol. I, § 226(h), pp. 413-414.

(3)    Mental Suffering.

"Mental anguish . . . is generally considered as pain and suffering, covering not only the pain associated with the injury but also the mental reaction to that pain and to the possible consequences of the injury.  It is thus distinguished from physical pain and suffering but can sometimes be inferred from it."  22 Am. Jur. 2d, Damages §251, p. 204.

A plaintiff injured by the wrongdoing of another is just as much entitled to be compensated for mental suffering caused thereby and for the results which proximately flow from it, as for physical suffering.  You should evaluate a claim of mental suffering in the same way that you would evaluate a claim for physical suffering.  "A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence . . . ."  Buckley v. Lovallo, 2 Conn. App. 579, 589 (1984).  If you are satisfied that a fair preponderance of the evidence supports each Plaintiff's claim for mental suffering, each Plaintiff is entitled to be compensated for their mental distress and suffering, including depression, anxiety and fear of what the future holds because of his or her injuries.  Orlo v. Connecticut Co., 128 Conn. 231, 239-240 (1941); see also Urban v. Hartford Gas Co., 139 Conn. 301 (1951); Ketsetos v. Nolan, 170 Conn. 637, 655 (1976).  Anxiety over the future consequences of an injury is an element of mental suffering that is compensable.  Petriello v. Kalman, 215 Conn. 377 (1990).

(4)    Loss of Enjoyment of Life's Activities.

As a further element of general damages, the Plaintiffs claim that they have suffered and will continue to suffer a loss of capacity to engage in and enjoy life's leisure activities. The significant factor here is whether the Plaintiff can no longer engage in social and leisure activities which he or she formerly enjoyed, or whether he or she can do so only with difficulty and limitations. It is for you to determine the types of leisure activities that are now more difficult or impossible for each Plaintiff as a result of their injuries. It is then your duty to place a dollar value on any activities you find are restricted or impossible due to the injuries each sustained. Jerz v. Humphrey, 160 Conn. 219 (1971). An interest in recreational activities or in a particular hobby that is impaired as a result of an injury is a compensable element. Bartholomew v. Schweizer, 217 Conn. 671, 685, 686 (1991), citing Kotsedos v. Nolan, 170 Conn. 637, 659 (1976); see also Mather v. Griffen Hospital, 207 Conn. 125, 150 (1977); Waldron v. Raccio, 166 Conn. 608, 619 (1974).

(5)    Physical Injuries.

The Plaintiffs claim compensation for the injuries each received and the permanent disability caused by those injuries. The injuries received by Plaintiff Martin Sabba are listed in Paragraph 13 of the First Count of the Amended Complaint and include the following:

  a.    fractures of the bones in each wrist

  b.    a lacerated liver

  c.    abdominal infection

  d.    loss of  gall bladder

  e.    pain and suffering

34

  f.  emotional distress

  g.  disability

The injuries received by Plaintiff Annette Sabba are listed in Paragraph 20 of the First Count of the Amended Complaint and include the following:

  a.  tri-malleolar fracture of her left ankle

  b.  torn ankle ligaments

  c.  a fractured right hand

  d.  two fractured ribs

  e.  concussion

  e.  extensive abrasions and bruising

  f.  pain and suffering

  g.  disability

  h.  emotional distress

## III.  WITNESSES

The credit that you will give to the testimony offered by the various witnesses is something which you must determine.  Bear in mind that if you find that any witness has deliberately testified falsely on any material point, you may take that into consideration in determining whether she or she has testified falsely on other points.

If you find that a witness has not testified accurately with respect to one fact, that does not necessarily mean that he or she is wrong on every other point.  A witness may be honestly mistaken on one point of his or her testimony, and be accurate on others. But, if you find that a witness has deliberately lied on any material point, you may be suspicious of his testimony on all points. Under those

circumstances you may disbelieve his or her entire testimony, according to your sound judgment.

Wright & Ankerman, Connecticut Jury Instructions, 4th Ed., 2003 Cumulative Suppl., § 644(b)(1).

## IV.    ARGUMENT OF MONEY DAMAGES

There were some arguments made by counsel to you concerning the amount of damages which should be awarded in this case.  It is up to you to determine what is fair and just under the circumstances.  Please remember that.  While counsel may have quoted to you some sums or mathematical formulae that they used as to what they believed the appropriate award to be, you must put that aside as it is not evidence but only the argument of counsel.  As members of this jury, if you reach the question of damages, it is solely up to you to bring in whatever figure you feel is fair and just compensation, no more and no less.  I remind you, it is for you, in the exercise of your best judgment, to say what is fair and just compensation to each Plaintiff insofar as money will compensate for the injuries which he or she has suffered.  There is no fixed rule which you can apply.  You have to apply sound, common sense in reaching the amount of your verdict. C.G.S. §52-216b.  See Bartholomew v. Schweizer, 217 Conn. 671 (1991).

## V.    USE OF MEDICAL REPORTS AS EVIDENCE

In this case, the Plaintiff has introduced into evidence numerous medical records from her treating physicians.  The parties have stipulated as to the admissibility of these records.  Accordingly, the Plaintiffs are not required to call as a witness all of the doctors who wrote these reports and this should not be held against the Plaintiff that she did not do so.  It is for you to determine the weight that you will place upon these records.

## VI.    COLLATERAL SOURCE AND DEDUCTIONS FROM JUDGMENT

During this trial you may also have heard reference to insurance . The law does not permit the

Defendants to rely upon the fact that the Plaintiffs received health insurance benefits during any period at issue in this lawsuit.  You should not make any assumptions about medical insurance payments as these payments have no place whatsoever in this case.  You should leave reference to this or to any medical insurance matter entirely out of your consideration. Whether or not any payments of that sort have been made is of no concern to you whatsoever.  The question you must address is: What is the value to be placed upon the injuries which each Plaintiff suffered?  See Wright and Daly, Connecticut Jury Instructions, 4th Ed., Vol. I, §234(a) and (b).

VII    LOSS OF CONSORTIUM

The Plaintiffs each claim a loss of consortium arising from the injuries suffered by their spouse. You are instructed that consortium includes all of the rights, interests, benefits and privileges that arise and flow from the marital relationship and society, the love and affection, the comfort, aid, advice and solace, the privileges of sexual relations, the rights of support, in good times and in bad times, the rendering of material services and any other elements that rightfully arise from an intimate and harmonious marital relationship.  An impairment, wrongful invasion, or deprivation of any of these rights, which results from an injury that disables a spouse in whole or in part, constitutes a legal loss and a basis for an award of damages to the other spouse deprived or harmed.

On the basis of the marital relationship, you may award to Annette Sabba such sum as damages as you are satisfied by the degree of proof required which will represent fair and just compensation for the loss of consortium as was sustained by her as a result of the injuries sustained by her husband, Martin Sabba,  to the extent that those injuries were proximately caused by the collision on July 7, 2002.  Similarly, and on the same grounds, you may award to Martin Sabba fair and just compensation for the loss of consortium as was sustained by him as a result of the injuries sustained by his wife,

37

Annette Sabba.

If you are satisfied by the same degree of proof that the losses will continue for any time in the future, you should make the proper allowance therefore as damages for the period that you believe it will continue to exist. The compensation for such loss, except as it relates to actual material services, is not measured by a rule of market value, but on the basis of what you find is fair and just compensation for losses sustained by the deprived spouse. With respect to the material services which otherwise would be performed by injured spouse, the compensation for those services is to be measured in terms of what it would reasonably cost on the market for such similar services. See Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 553 (1989); Hopson v. St. Mary's Hospital, 176 Conn. 485, 487 (1979).

**SCHEDULE H**

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

I.      Instructions proposed by Matthew and John Pambianchi

**BURDEN OF PROOF - AFFIRMATIVE DEFENSES:**

The defendants in this case, in addition to denying the claims made by the plaintiff, have

affirmatively asserted certain special defenses to the plaintiff's claims. I will review these special

defenses with you in a moment. The defendants have the burden of proof as to the allegations of any

special defenses upon which the defendants rely. The plaintiff does not have the burden to disprove the

allegations of the defendants' special defenses. Rather, each party has the burden of proving that party's

own claims and no burden to disprove the claims of that party's adversary. AUTHORITY: State of

Connecticut Judicial Website, Civil Jury Instruction #1-35, citing; *Perley v. Glastonbury Bank &*

*Trust Co.*, 170 Conn. 691, 698 (1976).

**COMPARATIVE RESPONSIBILITY:**

If, and only if, you find that one or more of the defendants were negligent, you will

also need to determine whether or not the plaintiff was also negligent and whether or not such

negligence was a proximate cause of his injuries.  To do this you must consider what is called the

comparative negligence rule.  It provides that in causes of action based on negligence, contributory

negligence shall not bar recovery if such contributory negligence was not greater than the combined

negligence of the persons against whom recovery is sought, but any damages allowed shall be

diminished in the proportion of the percentage of negligence attributable to the person recovering.

There are essentially two parts to this rule.  The first part concerns what is called in the law, a

complete bar to recovery.  If we combine every act and omission of every party to the action which

caused the injury, we then have the total 100% of the negligence involved. If the person seeking

recovery for that injury is more than 50% to blame (negligent) for that injury, he cannot recover any

damages from any of the other participants in the accident. His recovery is barred.

The second part of the rule explains that the effect upon awards of damages in those actions in

which the plaintiff is fifty percent or less at fault in causing his own injury (again taking 100% as the total

negligence of all parties to the action). It provides for a reduction or diminution of whatever sum of

money would fairly compensate such person for his injury and/or damages based on the extent to which

a person caused his own injury.

Authority: Wright, Hon. Douglass B. Wright and William Ankerman, Connecticut Jury Instructions

(Fourth Ed.) §536A and C.G.S. §52-572(h).

## BURDEN OF PROOF UPON THE PLAINTIFF REGARDING MEDICAL TESTIMONY

The plaintiffs have the burden of proving his and her medical claims and also proving that they

are related to the motor vehicle accident at issue in this case. This evidence must be based upon

reasonable medical probability. If the evidence only establishes that the injuries were possibly

connected to the motor vehicle accident, then you should find that the defendants are not responsible

for the injuries that were not caused by the motor vehicle accident based upon reasonable medical

probability. Grody v. Toulin, 170 Conn. 443 (1976).

Expert medical testimony is necessary as to the existence, extent or cause of injury or disease.

If you find that there has been no competent medical expert testimony relating certain of the alleged

injuries to the motor vehicle accident you cannot consider awarding the plaintiff damages for those

injuries. Budney v. Zalot, 168 Conn. 288 (1975).

The plaintiffs have the same burden in regard to medical expenses, which he or she is claiming

in this case.  If you find that the plaintiff has not presented competent medical evidence, through

experts, that the past or future medical expenses which are being claimed are related to the motor

vehicle accident, then you should not consider these bills and expenses in regard to the claim against the

defendants.  <u>Budney v. Zalot</u>, supra.

B.    <u>Instructions proposed by Chrysler Financial.</u>

1. If you determine under the rules I have given you that the plaintiff is entitled to recover damages, and

only if you so determine, then the plaintiff is entitled to recover only fair, just and reasonable

compensation. It is not proper for a jury considering the question of damages to attempt to be

generous, rather than fair and reasonable. Neither is sympathy for, nor ill will against, any party to play

any part in your determination or deliberations. It is not proper for you to consider your own feelings

and sympathies with either the plaintiffs or with the defendant, nor is it proper for you to consider what

award, if any, you would wish to have entered if you were either a plaintiff or a defendant. Rather, you

are to determine, under the rules I have given you, what sum of money would constitute fair, just and

reasonable compensation for such damages as you find proven and to have been proximately caused

by the accident in question.

   *Begley v. Kohl & Madden Printing Co., Inc.*, 157 Conn. 445, 452 (1969);

*Rosa v. American Oil Co., Inc.*, 139 Conn. 585, 589-90 (1943).

## 2. Considerations of Future Disability

In considering any question of compensation for future disability, it is necessary to consider what the

plaintiff's condition will be in the future, with reasonable certainty. The natural incidents of life which,

entirely apart from the accident in suit, would have a tendency to affect future activities, such as old age,

other accidents, sickness, disability not connected with this accident and such other common incidents and vicissitudes as are expected to a greater or lesser degree to affect all persons, must be considered in calculating any future pain and suffering and any future disability. Although nothing definite on this issue can be established, it should be considered, and must be, in determining the future impairment, if any, that is reasonably expected to be produced in the future because of the plaintiff's injuries.

*Johnson v. Fiske, 125 Conn. 445, 449 (1939).*

## 3. DISCOUNT OF FUTURE ECONOMIC LOSSES TO PRESENT VALUE

As I explained each of the plaintiffs has made a claim in this claim. The future they may incur what I have described to you as economic losses. They have the burden of proving that they will incur such expenses in the future in addition in assessing fair compensation you should adjust to present value any award you make for economic losses such as future medical or hospital expenses. If you should make any such award for economic losses under the rule I have already explained to you, you must adjust the amount of any such future loss, as best you can, to present or discounted value. In so doing, you must take into account not only the future course of interest rates, but also the future course of the rates of inflation and rates of growth in wages or increases in costs. This is because any allowance you make in the nature of monetary damages for future economic losses is substantially a present payment which the plaintiff would receive today, whereas it is in compensation for something which would occur only from time to time through the years in the future. In other words, any award at this time could be immediately put at interest, whereas any future element of loss so compensated would not, in fact, have occurred now, but only from time to time in the future. In the absence of expert testimony to establish another rate of discount, the Connecticut District Court approves the use of a 2% discount rate. That means

that you should discount or reduce to present value using the 2% per year formula any award for future

economic damages.

***Ammar v. U.S.***, **342 F.3d 133, 147-49 (2nd Cir. 2003);**

> ***Ramirez v. New York City Off-Track Betting Corp.***, **112 F.3d 38, 41 (2nd Cir. N.Y. 1997);**
>
> **Adapted from *Hollywood v. Combustion Engineering*, Civil Action No. B-80-458 (D.**
>
> **Conn. 1983)(Eginton, J.); 1 Wright, Connecticut Jury Instructions § 244e (4th ed. 1993);**
>
> ***Oliveri v. Delta Steamship Lines, Inc.***, **849 F. 2d 742, 748-749(2d Cir. 1988); *DeChico v.***
>
> ***Metro North Commuter R.R.***, **758 F.2d 856, 860 (2d Cir. 1985); *Doca v. Marina Mercante***
>
> ***Nicaraguense, S.A.***, **634 F.2d 30, 39-40 (2d Cir. 1980); *Feldman v. Allegheny Airlines,***
>
> ***Inc.***, **382 F.Supp. 1271 (D. Conn. 1974), *aff'd*, 524 F.2d 384, 387-388 (2d Cir. 1975);**
>
> ***Jackewicz v. United Illuminating Co.***, **106 Conn. 310, 314 (1927); *Chase v. Fitzgerald*,**
>
> **132 Conn. 461, 469-470 (1946).**

## 4. DISCOUNT OF FUTURE NON-ECONOMIC LOSSES TO PRESENT VALUE [1]

The plaintiffs have also made a claim in this case that in the future they may incur what I described to

you as non-economic damages. Similarly as with the case of economic damages, in assessing fair

compensation, you should adjust to present value any award you may make for non-economic

damages such as future pain and suffering. If you should make any such award for non-economic

---

[1] Plaintiffs disagree with this charge on the basis that in a diversity action arising from personal injury, the Court must look to the substantive law of the State of Connecticut with respect to damages. *See e.g.* Hipsher v. Lund, 827 F.2d 337 340 (8th Cir. 1988). Under Connecticut law, non-economic damages are not subject to present value discounting. *Mather v. Griffin Hosp.*, 207 Conn. 125, 149 n.4, 540 A.2d 666 (1988). The cases cited by the Defendant involve claims arising under federal law or common law claims involving economic damages. Accordingly, the authorities cited by the Defendant do not support its claim under these circumstances.

damages under the rules I have already explained to you, you must adjust the amount of any such future

loss, as best you can, to present or discounted value. In so doing, you must take into account not only

the future course of interest rates, but also the future course of the rates of inflation and rates of growth

in wages or increases in costs. This is because any allowance you make in the nature of monetary

damages for future non-economic damages such as pain and suffering damages is substantially a present

payment which the plaintiff would receive today, whereas it is in compensation for something which

would occur only from time to time through the years in the future. In other words, any award at this

time could be immediately put at interest, whereas any future element of damage so compensated

would not, in fact, have occurred now, but only from time to time in the future. Unlike the case of

economic damages, however, this court will not prescribe for you any specific discount or interest rate

to be used. It is for you the jury to take into account the time value of money and make a reasonable

reduction in the amount of the award you may make for non-economic damages to reflect the plaintiff's

opportunity to invest any such award while also bearing in mind that any such reduction may be

tempered by the future course of inflation.

Ammar v. U.S., 342 F.3d 133, 147-49 (2nd Cir. 2003); Ramirez v. New York City Off-Track Betting

Corp., 112 F.3d 38, 41 (2nd Cir. N.Y. 1997); Adapted from Hollywood v. Combustion Engineering,

Civil Action No. B-80-458 (D. Conn. 1983)(Eginton, J.); 1 Wright, Connecticut Jury Instructions §

244e (4th ed. 1993); Oliveri v. Delta Steamship Lines, Inc., 849 F. 2d 742, 748-749 (2d Cir. 1988);

DeChico v. Metro North Commuter R.R., 758 F.2d 856, 860 (2d Cir. 1985); Doca v. Marina

Mercante Nicaraguense, S.A., 634 F.2d 30, 39-40 (2d Cir. 1980); Feldman v. Allegheny Airlines,

Inc., 382 F.Supp. 1271 (D. Conn. 1974), aff'd, 524 F.2d 384, 387-388 (2d Cir. 1975); Jackewicz v.

United Illuminating Co., 106 Conn. 310, 314 (1927); Chase v. Fitzgerald, 132 Conn. 461, 469-470

(1946).

## 5. DAMAGES - PERSONAL INJURY - INJURY AND PAIN AND SUFFERING - INCOME TAX[2]

If your verdict is in favor of the plaintiff, the plaintiff will not be required to pay income taxes on the award and you must not add to or subtract from the award any amount on account of taxes.

Adapted from PJI 2-280.2 Damages - Personal Injury - Injury and Pain and Suffering [Supplemental Instruction]

## 6.  SYMPATHY MUST NOT BE A FACTOR IN THE DELIBERATIONS

Your verdict may not be premised on any element of sympathy. Any sympathy you may feel toward any party must not be a factor in your determination. You cannot find for the plaintiff in this case for injuries he alleges he sustained on some general feeling that the defendants should have acted in a way differently than they did. The question for you is not whether the plaintiff, in your view, is deserving of your sympathy, but whether he has proven all of the elements of his legal claims, as I have outlined them to you, by fair preponderance of the evidence.

*Federal Jury Practice and Instructions, 71.05*

*Parcinski v. Outlet Company, 673 F.2d 34 (2d Cir. 1982), cert. denied, 459 U.S. 1103 (1983).*

7.   In closing argument, counsel mentioned some formulas or amounts that night figure in your verdict. I caution you that figures suggested by counsel do not constitute evidence. It is up to you to decide what

---

[2]  The Plaintiff's disagree with this instruction on the basis that Connecticut law bars an instruction regarding the taxability or non-taxability of  damage awards. *Gorham v. Farmington Motor Inn, Inc.*, 159 Conn. 576, 580-81, 271 A.2d 94 (1970); *Sciola v. Shernow*, 22 Conn.App. 351, 361-62, 577 A.2d 1081 (1990).

fair, just and reasonable compensation is, whatever you find that figure might be, without regard to amounts that may have been suggested by counsel in argument.

**Connecticut General Statutes §52-216b;**

**Connecticut Judicial department Website, Civil Jury Instructions, §1-48**

**8.** The rule that the burden of proof is upon the plaintiff to satisfy you as to his injuries and his damage implies not merely that he must prove to you that he has suffered pain and the other damages he claims, but also that he must prove to you that such pain, suffering, incapacity and impairment of his faculties have been caused by this accident. If other factors not caused by this accident such as pre-existing conditions, or medical conditions unrelated to the accident are causing his pain, you will dismiss such claims from your minds. When I say "cause" to you in this connection, I mean that there must be the same causal connection between the accident and his suffering and disability as I explained to you earlier. In other words, you may make no award for pain and suffering or impairment which you do not find he has proven to be caused by the accident or which you may determine results from other factors affecting the plaintiff.

There must be a causal connection between the injuries claimed and the accident itself. If anything else is causing the pain or the plaintiff's condition as it is today, then of course, you would dismiss that from your minds. It is only when there is a causal connection (and I have already defined proximate cause-the relation of cause and effect between this accident and the plaintiff's injuries) that you would be entitled to award damages.

**Adapted from I Wright and Anderman Connecticut Jury Charges (r4h Ed.), Section 228.**

**See also Mourison v. Hansen, 128 Conn. 62, 66 (1941); Bonner v. Winter, 175 Conn. 41,**

**48 (1978).**

**SCHEDULE I**
**PLAINTIFFS' PROPOSED JURY INTERROGATORIES**

1.     Did the Plaintiff, Martin Sabba  prove by a fair preponderance of the evidence that the Defendant Matthew Pambianchi was negligent in one or more of the ways specified in the First Count of the Plaintiffs' Amended Complaint?

ANSWER:                 yes _____          no _____

2.     Was the Defendant Matthew Pambianchi's negligence a substantial factor in causing Martin Sabba's injuries?

ANSWER:                 yes _____          no _____

3.     Did the Defendants prove by a fair preponderance of the evidence that the Plaintiff Martin  Sabba was comparatively negligent in such a way as to be a substantial factor in causing some or all of his own injuries?

ANSWER:                 yes _____          no _____

4.     If the answer to Interrogatory #3 is "no" then proceed to Interrogatory #5. If the answer to Interrogatory #3 is "yes", specify the percentage of negligence attributable to:

Matthew Pambianchi             _____%
Martin Sabba                     _____%

5.     Is Defendant Chrysler Financial liable to Plaintiff Martin Sabba pursuant to *Connecticut General Statutes* § 14-154a?

ANSWER:                 yes _____          no _____

6.     Please specify the damages to be awarded to the Plaintiff Martin Sabba:

Economic Damages             $_____
Non-Economic Damages         $_____

**(DO NOT MAKE ANY ADJUSTMENTS FOR COMPARATIVE NEGLIGENCE , IF ANY, AS THE COURT WILL DO SO)**

7.     Do you find by a fair preponderance of the evidence that the Plaintiff Annette Sabba has suffered a loss of consortium from the injuries and damages sustained by her husband Martin Sabba?

ANSWER:                          yes _____                no _____

8.      If the answer to Interrogatory 7 is "yes", what amount of money do you award to her to compensate for her damages?

$_____

9.      Did the Plaintiff, Annette Sabba  prove by a fair preponderance of the evidence that the Defendant Matthew Pambianchi was negligent in one or more of the ways specified in the Second Count of the Plaintiffs' Amended Complaint?

ANSWER:                          yes _____                no _____

10.      Was the Defendant Matthew Pambianchi's negligence a substantial factor in causing Annette Sabba's injuries?

ANSWER:                          yes _____                no _____

11.      Is Defendant Chrysler Financial liable to Plaintiff Annette Sabba pursuant to *Connecticut General Statutes* § 14-154a?

ANSWER:                          yes _____                no _____

12.      Please specify the damages to be awarded to the Plaintiff Annette Sabba:

Economic Damages             $_____
Non-Economic Damages         $_____

13.      Do you find by a fair preponderance of the evidence that the Plaintiff Martin Sabba has suffered a loss of consortium from the injuries and damages sustained by his wife Annette Sabba?

ANSWER:                          yes _____                no _____

14.      If the answer to Interrogatory 13 is "yes", what amount of money do you award to him to compensate for his damages?

$_____

Dated at New Haven, Connecticut this _____ day of February, 2004

_____

Jury Foreperson (must be signed)